# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF:
THE PERSON OF CODY MICHAEL
DEGRAW, DATE OF BIRTH: XX/XX/1995

Case No.   25-MJ-64-GLJ

## APPLICATION FOR SEARCH WARRANT

I, Matt D. Gray, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

> **SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

> **SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Sections 2252(a)(2), (b)(1), 2252(a)(4)(B), and (b)(2), and the application is based on these facts:

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
MATT D. GRAY, Taskforce Officer
Homeland Security Investigations

Sworn to :

Date:   February 26, 2025

_____
*Judge's signature*
**GERALD L. JACKSON**
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and state:   Muskogee, Oklahoma

## Affidavit in Support of an Application
## Under Rule 41 for a Warrant to Search and Seize

I, Matt D. Gray, being first duly sworn under oath, depose and state:

## Introduction and TFO Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for two separate search warrants for the person and location more specifically described in Attachment A of this affidavit:

   a. Search Warrant 2: the person of Cody Michael DeGraw, Date of Birth: XX/XX/1995 ("Cody DeGraw")

   b. the content of electronic storage devices located therein, for evidence, instrumentalities, contraband, and/or fruits of violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt and Distribution of Child Pornography) and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography), which items are more specifically described in Attachment B of this affidavit.

2. I am a Federal Taskforce Officer as defined under Rule 41(a)(2)(C) and am authorized to request these search warrants because I am a government taskforce agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I am a Detective and have been employed with the Tulsa County Sheriff's Office since January 2013. I am also a Task Force Officer (TFO) with the Department of Homeland Security Investigations (HSI), currently assigned to investigate crimes involving child exploitation. While so employed, I have investigated federal criminal violations related to child exploitation, attempted enticement and coercion and child pornography. I have received training in the area of child pornography and child exploitation and have observed and reviewed numerous examples of child

pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I received training in the investigation of crimes involving the use of computers and the recovery of evidence from computers and computer-related storage devices. I have received focused child exploitation training covering topics such as: interview techniques, undercover investigations, capturing digital evidence, correlations between child pornography and hands-on offenses, psychological and behavioral characteristics of sex offenders, and mobile messaging platforms utilized by these types of offenders. Moreover, I am a Task Force Officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2422.

4. As part of my duties as a TFO, I investigate criminal violations relating to crime in Indian Country, to include Notice or Advertisement Seeking Child Pornography in violation of 18 U.S.C. §§ 2251(d)(1)(A) & 2251(e); Attempted Coercion and Enticement in violation of 18 U.S.C. § 2422(b); Receipt and Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and Possession of Child Pornography in Indian Country in violation of 18 U.S.C. §§ 2252(a)(4)(A) and (b)(2).

5. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

6. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt

and Distribution of Child Pornography) and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) will be located in the Eastern District of Oklahoma, on the person of Cody DeGraw, as further described in Attachment A.

## Jurisdiction

7. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

8. The requested search is related to the following violations of federal law:

a. Title 18, United States Code, Sections 2252(a)(2) and (b)(1) prohibit any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction that has been mailed, shipped, or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; and

b. Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

9. Venue is proper because the person to be searched is located within the Eastern District of Oklahoma.

## Definitions

10. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and the attachments incorporated herein:

a. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture,

whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct;

b. "Internet Protocol address" or "IP address" refers to a unique number used by a computer or electronic device to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses may also be static, which means the ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet;

c. "Electronic Mail," commonly referred to as email (or e-mail), is a method of exchanging digital messages from an author to one or more recipients. Modern email operates across the Internet or other computer networks. Email systems are based on a store-and-forward model; that is, email servers accept, forward, deliver, and store messages. Neither the users nor their computers are required to be online simultaneously; they need only connect briefly, typically to an email server, for as long a period of time as it takes to send or receive messages. One of the most commons methods of obtaining an email account is through a free web-based email service provider such as, Outlook, Yahoo, or Gmail. Anyone with access to the Internet can generally obtain a free web-based email account;

d. A "hash value" or "hash ID" is a unique alpha-numeric identifier for a digital file. A hash value is generated by a mathematical algorithm, based on the file's content. A hash value is a file's "digital fingerprint" or "digital DNA." Two files having identical content will have the same hash value, even if the file names are different. On the other hand, any change to the data

in a file, however slight, will change the file's hash value, even if the file name is unchanged. Thus, if two files have the same hash value, they are said to be identical, even if they have different file names;

e. "Cloud storage service" refers to a publicly accessible, online storage provider that can be used to store and share files in large volumes. Users of cloud storage services can share links and associated passwords to their stored files with others in order to grant access to their file collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop computers, laptops, mobile phones or tablets, from anywhere. Many services provide free access up to a certain size limit;

f. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state;

g. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years;

h. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form;

i. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person; and

j. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and

videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

### Background of NCMEC and the Cyber Tipline Program

11. The National Center for Missing & Exploited Children ("NCMEC") was incorporated in 1984 by child advocates as a private, non-profit 501(c)(3) organization to serve as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited child issues. To further the mission to help find missing children, reduce child sexual exploitation, and prevent future victimization, NCMEC operates the Cyber Tipline and Child Victim Identification Program. NCMEC makes information submitted to the Cyber Tipline and Child Victim Identification Program available to law enforcement and also uses this information to help identify trends and create child safety and prevention messages. As a clearinghouse, NCMEC also works with Electronic Service Providers ("ESPs"), law enforcement and the public in a combined effort to reduce online child sexual abuse images. NCMEC performs its programs of work pursuant to its own private mission and independent business operations. NCMEC does not act in the capacity of or under the direction or control of the government or law enforcement agencies. NCMEC does not investigate and cannot verify the accuracy of the information submitted by reporting parties.

12. NCMEC's Cyber Tipline is the nation's centralized reporting system for the online exploitation of children. The public and ESPs can make reports of suspected online enticement of children for sexual acts, child sexual molestation, child sex abuse material, child sex tourism, child sex trafficking, unsolicited obscene materials sent to a child, misleading domain names, and misleading words or digital images on the internet. Cyber Tipline Reports ("Cyber Tips") are distributed by NCMEC analysts to law enforcement agencies who may have legal jurisdiction in

the place that victims and suspects are believed to be located based on information provided in the Cyber Tips.

**Probable Cause**

13. On January 22, 2024, Affiant received a Cyber Tip (183370295) from the National Center for Missing and Exploited Children (NCMEC) through the Oklahoma State Bureau of Investigation (OSBI) regarding a MediaLab/Kik account that showed the suspect possibly residing in Coweta, Oklahoma in the Eastern District of Oklahoma's jurisdiction. Through my training and experience in the field, Affiant knows that MediaLab is a holding company which owns several internet brands, including Kik and Kik Messenger. A MediaLab account is a user account on the Kik messaging application. "Kik" is a social media platform and messaging application that allows users to chat with friends, send texts, photos, and videos, and share GIFs (short for Graphics Interchange Format, which is an image file that can be animated). The Kik application is popular with young adults for its privacy and anonymity controls. Affiant will hereinafter refer to the application and company as Kik.

14. Based upon my training and experience, Affiant knows that when Kik detects "apparent child pornography" or child sexual abuse imagery on one of its accounts, Kik reports the account and the activity to NCMEC's Cyber Tipline in accordance with the federal statutory definition of child pornography as referenced in 18 USC § 2256. NCMEC then reports the account and the activity to the organization within that state that runs the Internet Crimes Against Children Program (ICAC). In Oklahoma, the Oklahoma State Bureau of Investigations (OSBI) runs ICAC. Cyber Tip (183370295) was reported by Kik to NCMEC on January 22, 2024, because the account showed "apparent child pornography." The Cyber Tip showed the suspect possibly residing in Coweta, Oklahoma in the Eastern District of Oklahoma's jurisdiction, and included the suspect's email address of sarah.epiccmd@yahoo.com, the suspect's Kik screen username of "kissmesarah,"

the account's ESP User ID of "kissmesarah_uae" and a Cox Communication IP address of "216.16.128.18" with the respective time stamp of 12/31/23 @ 15:56:49 UTC.

15. The Cyber Tip was flagged and reported by Kik to NCMEC on 12/31/2023 16:00:05 UTC (Cyber Tip 183370295).

16. Affiant was able to view the 4 videos which were uploaded from the suspect's Kik account. All files were also previously viewed by Kik, thus generating the Cyber Tip. The first and fourth videos displayed a dark skin prepubescent girl performing oral sex on a dark skin adult male by performing oral sex on his erect penis. The second and third videos displayed a white prepubescent girl pulling down her pants and penetrating her vagina with a soda bottle. Through my investigation and as set forth more fully below, I was able to determine that two of these videos were uploaded at 11251 S. 275th E. Ave in Coweta, OK and two of these videos were uploaded at 2920 S. John Williams Way, in Tulsa, OK.

17. On January 23, 2024, a state subpoena was sent to Cox Communications for the IP address "216.16.128.18," which the suspect (the name of whom was unknown at that time) used to upload child pornography videos. A state search warrant was produced and sent to Yahoo for the suspect's email address of sarah.epiccmd@yahoo.com, and an additional state search warrant was sent to Kik for the suspect's account username of kissmesarah with the account ESP User ID of "kissmesarah.uae."

18. The Cyber Tip listed another Cox Communications IP address of "70.189.90.158" with its respective time stamp of 12-28-23 @ 22:56:18 UTC. This IP address was used by the suspect's Kik account when logging on and uploading child pornography. An additional state subpoena was sent to Cox Communications.

19. On January 25, 2024, Affiant received the search warrant for the suspect's Yahoo account,

sarah.epiccmd@yahoo.com. The return yielded no evidence fruitful to this investigation. From Affiant's training and experience, he knows that individuals who illegally download and or distribute child pornography will in some cases use fake email addresses, media accounts, and false identities in order to deter law enforcement due to the nature of the offense being committed.

20. On February 5, 2024, Affiant received the first Cox Communications subpoena return for IP address "70.189.90.158." The return yielded a residential address in Coweta located at 11251 S. 275th E. Ave. The owner and/or obligator of said listed Cox Communications Wi-Fi shows to be ███ █ AKA ████ ██████ and lists a phone number of ██████-7371. Using the name ███████ AKA ██████ Affiant began to develop additional information to assist in determining the name of the suspect.

21. When law enforcement has preliminary information on a potential crime, suspect, or witness, the agency can utilize the Case Logging, Enforcement, and Actvity Reporting (CLEAR) system to search public and proprietary records for things such as law enforcement agency data, license plate recognition, real-time incarceration and arrest records and to help locate and/or identify individuals of interest. Affiant utilized CLEAR to determine that ████████ (DOB X/XX/1996) shows to be married to a Cody DeGraw (DOB X/XX/1995).

22. This marriage information was also verified by Oklahoma Supreme Court Network (oscn.net) records, which shows that ██████ and Cody DeGraw were married in 2021. Both show to reside at the Coweta address received from the first Cox Communications subpoena return for IP address "70.189.90.158.", ie: 11251 S. 275th E. Ave, and their publicly available Facebook profiles also shows them to reside in Coweta. Facebook also shows both in photographs with a young girl (who was later identified as ██████ ██████ s 12-year-old daughter and Cody DeGraw's step-daughter).

23. Utilizing another law enforcement database known as ZetX, which is an online website utilized by law enforcement through their investigations in order to help locate and or identify individuals of interest, Affiant was able to determine that the number ▮▮▮▮-7371, ie: the number that was determined to be associated with the Cox Communications Wi-Fi at the Coweta address, is listed in the name of ▮▮▮▮▮▮ (DOB X/XX/1971). Cross-checking that information (ie: the name ▮▮▮▮▮) through CLEAR, the Affiant was able to determine that ▮▮▮ is a relative to Cody DeGraw and, due the age difference, could perhaps be Cody DeGraw's father. Facebook shows ▮▮▮, ▮▮▮▮, and Cody listed on each other's friends list. This information provided additional corroborating evidence that the suspect could be identified as Cody DeGraw.

24. On February 8, 2024, Affiant received the second Cox Communication subpoena return for IP address "216.16.128.18." The return yielded the Wi-Fi address in Tulsa, OK as located at 2950 S. John Williams Way. This is the address of the Gathering Place Community Park in Tulsa, OK.

25. During Affiant's investigation, he had previously received a "target package" created by O.S.B.I. "Target packages" typically include information on the subject of interest from the investigation, their identity information, driver's license information, employment, and vehicles that the subject either owns or vehicles that check back to the residence in question.

26. Reviewing Cody DeGraw's employment information, Affiant was able to determine that he is employed for GKFF Parks Conservancy, LLC, which is located at 2920 S. John Williams Way, in Tulsa, OK. This is the same location of the Gathering Place community park boat house, where two child pornography images were uploaded from suspect Cody DeGraw's Kik account per the Cyber Tip.

27. In total, four videos of child pornography were uploaded from suspect Cody DeGraw's Kik account, which in turn created the Cyber Tip from Kik. Using the Cox Communications

subpoena return information for the IP address "70.189.90.158.", Affiant was able to determine that two of the videos were uploaded at 11251 S. 275th E. Ave., Coweta, now identified as suspect Cody DeGraw's home and which I know to be located in the jurisdiction of the Eastern District of Oklahoma. Using the Cox Communications subpoena return information for the IP address "216.16.128.18," Affiant was able to determine that the other two videos were uploaded at 2950 S. John Williams Way, now identified as suspect Cody DeGraw's place of employment located within the Gathering Place.

28. On February 21, 2024, Affiant received the search warrant return for Cody DeGraw's Kik account with username "kissmesarah." The return yielded multiple IP addresses used by Cody DeGraw when logging on to his Kik account. The multiple addresses are contained within this Affidavit and specifically in paragraph 31 below. The probable cause to believe that it was Cody DeGraw logging into the Kik account is set forth in this Affidavit and specifically in paragraph 45 below.

29. From January 19, 2024, through January 24, 2024, the Kik account used the same Cox Communication IP address of "70.189.90.158." This IP address was already determined earlier in the investigation to be owned by ███████ AKA ███████ ███, who is married to Cody DeGraw and resides at 11251 S. 275th E. Ave, in Coweta, OK. The probable cause to believe that it was Cody DeGraw logging into the Kik account is set forth in this Affidavit and specifically in paragraph 45 below.

30. This specific IP address was used by suspect Cody DeGraw's account at all times of the day. Another Cox Communications IP address used by Cody DeGraw which was located on the Kik return was "98.178.166.213."

31. This particular IP address is also reported out of Coweta and was used to access Cody DeGraw's account from January 26, 2024, through February 11, 2024. An additional Cox

Communications subpoena was submitted for this newly found IP address. Both IP addresses used

and time stamps are listed below from the Kik return.

- Date/time Timestamp Device Extra data
  2024/01/19 01:21:58 UTC "ip":"70.189.90.158"
  2024/01/19 01:32:41 UTC "ip":"70.189.90.158"
  2024/01/19 01:33:37 UTC "ip":"70.189.90.158"
  2024/01/19 01:41:20 UTC "ip":"70.189.90.158"
  2024/01/19 01:41:36 UTC "ip":"70.189.90.158"
  2024/01/19 01:41:51 UTC "ip":"70.189.90.158"
  2024/01/19 01:42:17 UTC "ip":"70.189.90.158"
  2024/01/19 01:42:33 UTC "ip":"70.189.90.158"
  2024/01/19 01:42:42 UTC "ip":"70.189.90.158"
  2024/01/19 08:34:30 UTC "ip":"70.189.90.158"
  2024/01/19 08:47:16 UTC "ip":"70.189.90.158"
  2024/01/19 08:51:36 UTC "ip":"70.189.90.158"
  2024/01/19 08:51:51 UTC "ip":"70.189.90.158"
  2024/01/19 08:52:04 UTC "ip":"70.189.90.158"
  2024/01/19 08:52:16 UTC "ip":"70.189.90.158"
  2024/01/19 19:11:02 UTC "ip":"70.189.90.158"
  2024/01/19 19:21:57 UTC "ip":"70.189.90.158"
  2024/01/19 20:02:53 UTC "ip":"70.189.90.158"
  2024/01/19 20:20:58 UTC "ip":"70.189.90.158"
  2024/01/19 20:22:59 UTC "ip":"70.189.90.158"
  2024/01/20 04:34:48 UTC "ip":"70.189.90.158"
  2024/01/20 04:45:39 UTC "ip":"70.189.90.158"
  2024/01/20 04:48:19 UTC "ip":"70.189.90.158"
  2024/01/20 04:48:19 UTC "ip":"70.189.90.158"
  2024/01/20 05:24:46 UTC "ip":"70.189.90.158"
  2024/01/20 06:30:55 UTC "ip":"70.189.90.158"
  2024/01/21 00:13:57 UTC "ip":"70.189.90.158"
  2024/01/21 00:19:01 UTC "ip":"70.189.90.158"
  2024/01/21 00:19:24 UTC "ip":"70.189.90.158"
  2024/01/21 00:20:39 UTC "ip":"70.189.90.158"
  2024/01/21 22:37:06 UTC "ip":"70.189.90.158"
  2024/01/21 22:45:30 UTC "ip":"70.189.90.158"
  2024/01/22 00:15:16 UTC "ip":"70.189.90.158"
  2024/01/22 00:28:05 UTC "ip":"70.189.90.158"
  2024/01/22 00:31:39 UTC "ip":"70.189.90.158"
  2024/01/22 00:33:02 UTC "ip":"70.189.90.158"
  2024/01/22 00:45:48 UTC "ip":"70.189.90.158"
  2024/01/22 03:42:28 UTC "ip":"70.189.90.158"
  2024/01/22 03:50:57 UTC "ip":"70.189.90.158"
  2024/01/22 04:03:57 UTC "ip":"70.189.90.158"
  2024/01/22 04:08:19 UTC "ip":"70.189.90.158"
  2024/01/22 04:59:14 UTC "ip":"70.189.90.158"

```
2024/01/22 05:47:33 UTC "ip":"70.189.90.158"
2024/01/22 05:58:18 UTC "ip":"70.189.90.158"
2024/01/22 06:21:20 UTC "ip":"70.189.90.158"
2024/01/22 06:25:19 UTC "ip":"70.189.90.158"
2024/01/22 06:32:04 UTC "ip":"70.189.90.158"
2024/01/22 06:47:28 UTC "ip":"70.189.90.158"
2024/01/22 07:01:04 UTC "ip":"70.189.90.158"
2024/01/22 16:09:36 UTC "ip":"70.189.90.158"
2024/01/22 16:25:05 UTC "ip":"70.189.90.158"
2024/01/22 19:22:29 UTC "ip":"70.189.90.158"
2024/01/23 05:08:45 UTC "ip":"70.189.90.158"
2024/01/24 06:06:57 UTC "ip":"70.189.90.158"
2024/01/24 06:06:57 UTC "ip":"70.189.90.158"
2024/01/24 06:06:57 UTC "ip":"70.189.90.158"
2024/01/24 06:06:57 UTC "ip":"70.189.90.158"
2024/01/24 06:10:54 UTC "ip":"70.189.90.158"
2024/01/24 07:20:48 UTC "ip":"70.189.90.158"
2024/01/24 07:32:35 UTC "ip":"70.189.90.158"
2024/01/24 07:32:54 UTC "ip":"70.189.90.158"
2024/01/24 07:33:02 UTC "ip":"70.189.90.158"
2024/01/24 07:33:14 UTC "ip":"70.189.90.158"
2024/01/24 07:34:41 UTC "ip":"70.189.90.158"
2024/01/24 07:35:41 UTC "ip":"70.189.90.158"
2024/01/24 07:35:56 UTC "ip":"70.189.90.158"
2024/01/24 07:36:09 UTC "ip":"70.189.90.158"
2024/01/24 07:36:21 UTC "ip":"70.189.90.158"
2024/01/24 07:37:40 UTC "ip":"70.189.90.158"
2024/01/24 07:39:26 UTC "ip":"70.189.90.158"
2024/01/24 07:41:20 UTC "ip":"70.189.90.158"
2024/01/24 07:44:21 UTC "ip":"70.189.90.158"
2024/01/24 07:44:37 UTC "ip":"70.189.90.158"
2024/01/24 07:44:49 UTC "ip":"70.189.90.158"
2024/01/24 07:45:00 UTC "ip":"70.189.90.158"
2024/01/24 07:45:53 UTC "ip":"70.189.90.158"
2024/01/24 07:46:08 UTC "ip":"70.189.90.158"
2024/01/24 07:47:01 UTC "ip":"70.189.90.158"
2024/01/24 08:04:49 UTC "ip":"70.189.90.158"
2024/01/26 16:24:51 UTC "ip":"98.178.166.213"
2024/01/26 16:35:21 UTC "ip":"98.178.166.213"
2024/01/26 16:39:26 UTC "ip":"98.178.166.213"
2024/01/26 16:44:25 UTC "ip":"98.178.166.213"
2024/01/26 16:44:41 UTC "ip":"98.178.166.213"
2024/01/26 16:45:03 UTC "ip":"98.178.166.213"
2024/01/26 16:45:22 UTC "ip":"98.178.166.213"
2024/01/26 16:48:30 UTC "ip":"98.178.166.213"
2024/01/26 16:51:28 UTC "ip":"98.178.166.213"
2024/01/26 16:51:48 UTC "ip":"98.178.166.213"
```

2024/01/26 16:52:16 UTC "ip":"98.178.166.213"
2024/01/26 16:52:39 UTC "ip":"98.178.166.213"
2024/01/26 16:52:51 UTC "ip":"98.178.166.213"
2024/01/26 16:53:05 UTC "ip":"98.178.166.213"
2024/01/26 16:54:18 UTC "ip":"98.178.166.213"
2024/01/26 16:55:11 UTC "ip":"98.178.166.213"
2024/01/26 16:56:12 UTC "ip":"98.178.166.213"
2024/01/26 16:56:35 UTC "ip":"98.178.166.213"
2024/01/26 16:57:01 UTC "ip":"98.178.166.213"
2024/01/26 16:57:21 UTC "ip":"98.178.166.213"
2024/01/26 16:57:33 UTC "ip":"98.178.166.213"
2024/01/26 16:59:33 UTC "ip":"98.178.166.213"
2024/01/26 16:59:42 UTC "ip":"98.178.166.213"
2024/01/26 17:02:54 UTC "ip":"166.177.120.235"
2024/01/26 17:04:01 UTC "ip":"166.177.120.235"
2024/01/26 17:06:26 UTC "ip":"70.169.51.153"
2024/01/26 17:06:37 UTC "ip":"70.169.51.153"

32. Also, in the Kik return, Affiant located hundreds of additional videos, to include the Child Sexual Abuse Material (CSAM) videos which produced the Cyber Tip.

33. Most of the videos discovered in the Kik return were bestiality videos of adult males and/or adult women having sexual intercourse with horses and dogs. Three additional videos that were discovered, appeared to be homemade by Cody DeGraw, in a residential bathroom and closet. In the images, the individual's face is shown, which resembles Cody DeGraw's face if he had shaved. During Affiant's investigation, he had previously developed a target packet with the assistance from O.S.B.I., who produced Cody DeGraw's Oklahoma State issued Driver's License. Cody DeGraw's photo I.D. appears to be the same face that is displayed in the images. The individual in the images appears to be the same size as Cody DeGraw, who is a heavier set male. In one video, the subject can be observed upside down, unclothed, and ejaculating semen into his mouth.

34. After notifying tribal dispatches, Affiant discovered through the Cherokee Tribal dispatch that both ▮▮▮▮ and Cody DeGraw are listed as Cherokee Tribal citizens.

35. On March 27, 2024, Affiant received the final Cox Communications subpoena return for IP address "98.178.166.213." This IP address is listed in the name of ▮▮▮▮▮▮ and the

residence she shares with Cody DeGraw, located at 11251 S. 275th E. Ave, in Coweta, OK.

36. On January 13, 2025, surveillance was established in front of Cody DeGraw's residence and was conducted utilizing a drop car equipped with surveillance video. The video provided not only Cody DeGraw's pattern of life, but also that of his wife ███████ ███████ and her 12-year-old daughter.

37. Through the video footage, Affiant was able to determine that ███████ takes her daughter to school every morning around 0800 hours and arrives back home around 0835 hours. Affiant made contact with the school resource officer of Coweta Public Schools, and it was determined that the daughter attends ███████████████ with a start time of 0830 hours.

38. ███████ was observed arriving back home and staying home the rest of the day. Cody DeGraw was observed leaving for work at 0630 hours on Monday and 0930 hours every Tuesday and Wednesday. On Thursdays and Fridays, Cody DeGraw was not observed leaving his residence or going to work. This investigation had previously determined that Cody DeGraw works for the Gathering Place in Tulsa, Oklahoma.

39. For approximately 2 weeks, Cody DeGraw, his wife ███████, and her daughter showed the same pattern of life every morning. On January 21, 2025, Affiant observed Cody DeGraw leaving his residence at approximately 0930 hours. Affiant conducted a lose follow of Cody DeGraw on his way to his place of employment.

40. Affiant conducted a traffic stop on Cody DeGraw at approximately 7800 E. Broken Arrow Expressway westbound due to Cody DeGraw traveling 80-mph in a 65-mph zone. During the traffic stop, Affiant was able to verify that Cody DeGraw works for the Gathering Place, that Cody DeGraw was enroute to the Gathering Place for work, and Affiant received Cody DeGraw's entire weekly work schedule.

41. Cody DeGraw stated that he leaves for work at 0630 hours on Saturday through Monday.

On Tuesdays and Wednesdays, Cody DeGraw stated he leaves for work at 0930 hours, and he is off work on Thursdays and Friday's. This matches precisely to what the video footage showed of Cody DeGraw's pattern of life. Cody DeGraw received a written warning, and the traffic stop was concluded.

42. Through the weeks of surveillance from Affiant, while in person and from video footage, Affiant has determined that no other individuals have been seen coming and/or going from Cody DeGraw's residence other than Cody DeGraw himself, his wife ███ and her daughter.

43. Surveillance has also determined there are three vehicles that are used and owned by Cody DeGraw and his wife. Those vehicles, which are parked in Cody DeGraw's driveway, are listed below.

| VEHICLE | TAG |
|---|---|
| Black Honda Accord 4-door | BB6785 Cherokee Nation Tag |
| Green GMC Sierra Ext. Cab | AG0941 Cherokee Nation Tag |
| 2009 Black Pontiac G8 Sedan | AC7132 Cherokee Nation Tag |

44. Surveillance has determined Cody DeGraw's primary vehicle is the green GMC Sierra truck and is the vehicle which he drives to work every morning. ███ has only been observed driving the black Honda Accord. An additional vehicle which is parked in their driveway, is a 2011 black 4-door BMW bearing Oklahoma plate KKS-872. This vehicle has not been observed leaving the residence and has a tag which expired in March of 2024. ███ and Cody DeGraw have been observed getting in and out of and retrieving items from both the black Pontiac G8 sedan and the black BMW.

45. As set forth more fully above, Affiant was able to determine probable cause that Cody DeGraw is the suspect in this case and that neither ▮▮▮ ▮▮▮ nor ▮▮▮ ▮▮▮ are considered suspects at this time. This determination was made based upon all of the facts included herein, and specifically the following: the child pornography was uploaded both at locations where suspect Cody DeGraw lives and works and on days and times that are consistent with his pattern of life; the child pornography was accessed through IP addresses wherein the common denominator is suspect Cody DeGraw; and a review of homemade videos contained within the CSAM show a man identified by Affiant as suspect Cody DeGraw as the producer of the videos and that the videos are consistent with being produced in his home, and at least one of the videos shows suspect Cody DeGraw in a sexual scenario wherein he ejaculates into his own mouth.

### Characteristics Common to Individuals who Exhibit a Sexual Interest in Children and Individuals who Distribute, Receive, Possess and/or Access with Intent to View Child Pornography

46. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who distribute, receive, possess, and/or access with intent to view child pornography:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity;

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may

use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts;

c. Such individuals almost always possess and maintain digital or electronic files of child pornographic material, that is, their pictures, videos, photographs, correspondence, mailing lists, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, videos, photographs, correspondence, and mailing lists for many years;

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis;

e. Based on my training and experience and speaking with other special agents, I know that such individuals have taken their electronic devices and storage media, which contain their collections of child pornography, with them when they have moved or changed residences;

f. Such individuals may also take it upon themselves to create their own child pornography or child erotica images, videos or other recordings, or engage in contact sex offenses with children. These images, videos or other recordings may be taken or recorded covertly, such as with a hidden camera in a bathroom, or the individual may have child victims he or she is abusing in order to produce child pornographic or child erotica images, videos or other recordings. Studies have shown there is a high cooccurrence between those who traffic in child

pornography and commit sex offenses with children. Such individuals may also attempt to persuade, induce, entice, or coerce child victims in person or via communication devices to self-produce and send them child pornography or to meet in person for sex acts. These images, videos or other recordings are often collected, traded, or shared;

g. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted"[1] it;

h. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography;

i. Such individuals prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. Thus, even if Cody DeGraw uses a portable device (such as a mobile phone) to access the internet and child pornography, it is more likely than not that evidence of this access will be found on the person of Cody DeGraw, as set forth in Attachment A.

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010).)

## Background on Child Pornography, Computers, and the Internet

47. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

a. Computers, smartphones[2] and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers and smartphones basically serve four functions in connection with child pornography: production, communication, distribution, and storage;

b. Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos;

c. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers and smartphones and tablets around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone;

---

[2] Smartphones are a class of mobile phones and of multi-purpose mobile computing devices. They are distinguished from feature phones by their stronger hardware capabilities and extensive mobile operating systems, which facilitate wider software, internet (including web browsing over mobile broadband), and multimedia functionality (including music, video, cameras, and gaming), alongside core phone functions such as voice calls and text messaging.

d. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also almost always carried on an individual's person (or within their immediate dominion and control) and can additionally store media;

e. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion;

f. Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone or external media in most cases; and

g. As is the case with most digital technology, communications by way of computer or smartphone can be saved or stored on the computer or smartphone used for these purposes. Storing this information can be intentional (i.e., by saving an e-mail as a file on the computer or smartphone, or saving the location of one's favorite websites in, for example, "bookmarked"

files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer or smartphone user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

### Specifics of Search and Seizure of Computer Systems

48. As described above and in Attachment B, this application seeks permission to search for records that might be found on the person of Cody DeGraw in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media, such as a cellular phone, smartphone, or tablet. Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

49. I submit that if a computer or storage medium is found on the person of Cody Degraw, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data;

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file;

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information;

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

50. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrants, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium on the person of Cody DeGraw because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and

passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified;

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that logs the following: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within

a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement);

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when;

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.

Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant;

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent;

f. I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

51. Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of computer systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, smartphones, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software website, or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly

unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

52. Additionally, based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

53. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrants and would authorize a later review of the media or information consistent with the warrants. The later review may require techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrants.

### Conclusion

54. Based on the information set forth in this affidavit, I submit there is probable cause to believe that 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt and Distribution of Child Pornography) and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) have been violated, and that evidence, instrumentalities, contraband, and/or fruits of these offenses, more fully described in Attachment B, are located at the sites described in Attachment A. I respectfully request that this Court issue search warrants for the locations described in Attachment A, authorizing the search and seizure of the items described in Attachment B.

55. I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab; digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Respectfully submitted,

_____
MATT D. GRAY, Taskforce Officer
Homeland Security Investigations

Sworn to on February 26, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Person to be Searched

This warrant applies to the person of Cody Michael DeGraw, date of birth XX/XX/1995, and social security number XXX-XX-9297, who is listed on his driver's license as 5'9" tall, weighing 200 pounds and having blue eyes, and who is pictured below:



## ATTACHMENT B
### Particular Things to be Seized

All items that constitute evidence, instrumentalities, contraband, and/or fruits of violations of Title 18, United States Code, Sections 2252(a)(2) and (b)(1) (Receipt and Distribution of Child Pornography) and Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) involving Cody DeGraw, including:

A. Images/videos/gifs of child pornography or child erotica; files containing images/videos/gifs; and data of any type relating to the sexual exploitation of minors or a sexual interest in children, material related to the possession thereof, and data of any type related to any person employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting such visual depiction of such conduct, in any form wherever it may be stored or found including, but not limited to:

i. Any cellular telephone, smartphone, tablet, personal digital assistant, computer, computer system and related peripherals; computer hardware; computer software; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, monitors, printers, external storage devices, routers, modems, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including,

but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to computer passwords and data security devices and computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

ii. Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iii. Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children; and

iv. Stories, text-based files, motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children];

B. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or pertaining to the sexual exploitation of minors or a sexual interest in children, that were transmitted or received using computer, cellular device,

personal digital assistant, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i. Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

ii. Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children];

iii. Any and all records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iv. Any and all records, documents, or materials, including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, Section 2256; or relating to the sexual exploitation of minors or a sexual interest in children;

v. Any and all records of Internet usage including usernames and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums, including CDs or DVDs;

vi. Any physical keys, encryption devices, dongles and similar physical items necessary to access computer equipment, storage devices or data;

vii. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and

viii. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, or router configuration software];

C. Credit card information including, but not limited to, bills and payment records, and including, but not limited to, records of internet access;

D. Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence;

E. Records or other items which evidence ownership or use of computer equipment or any of the devices described in this attachment that are found on the person, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes;

F.  Any and all adapters, chargers or other hardware items necessary to charge the battery, or to maintain the functioning of, any of the equipment described above; and

G.  Any data or materials establishing ownership, use or control of any computer equipment seized from the person of Cody DeGraw.

H.  Any and all information, correspondence (including emails and text messages), records, documents and/or other materials related to contacts, in whatever form, with minors involving the production, possession and/or distribution of child pornography and the attempt or act of educing, enticing, coercing, or persuading a minor to engage in sexual acts.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.